PETER BICKS (Pro Hac Vice)
pbicks@orrick.com
ELYSE ECHTMAN (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:  +1 212 506 5000
Facsimile:   +1 212 506 5151

MICHAEL C. WEED (SBN 199675)
mweed@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone:  +1 916 447 9200
Facsimile:   +1 916 329 4900

NATALIE NAHABET (SBN 301597)
nnahabet@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone:  +1 213-629-2020
Facsimile:   + 213-612-2499

*Attorneys for Defendants*
Johnson & Johnson and Johnson & Johnson
Consumer Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| HERMELINDA LUNA, ALEXANDRIA HANKS ON BEHALF OF THE ESTATE OF TANIA D. HANKS, ETHEL HERRERA, JEANETTE JONES, BECKY CANZONERI, MARGARET REED and BRENDA VERSIC,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER INC., AND DOES 1-25, inclusive,<br><br>Defendants. | Case No. 2:18-cv-04830-GW(KSx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(2)**<br><br>Date:      July 29, 2019<br>Time:     8:30 AM<br>Dept:     9D<br>Judge:    Hon. George H. Wu<br><br>Trial Date: October 15, 2019<br>**Date Action Filed:      March 6, 2018** |

# Table of Contents

I. INTRODUCTION .................................................................................... 1

II. PROCEDURAL HISTORY ..................................................................... 2

    A. Commencement of the Action ..................................................... 3

    B. Removal to This Court ................................................................. 4

    C. Defendants' Motion to Dismiss and Answers .............................. 4

    D. The Court-Ordered Case Schedule .............................................. 4

    E. Fact Discovery ............................................................................. 5

    F. Expert Discovery ......................................................................... 8

        1. Plaintiffs' Initial Expert Disclosure ................................. 8

        2. Defendants' Expert Disclosures ..................................... 10

        3. Plaintiffs' Rebuttal Expert Disclosures ......................... 11

    G. The Court-Ordered Mediation ................................................... 12

    H. Plaintiffs' Motion to Amend and Add Valeant as a Defendant.......... 12

    I. The Motion for Voluntary Dismissal .......................................... 13

III. ARGUMENT ........................................................................................ 14

    A. The Motion Should be Denied Because a Dismissal Will Result In Legal Prejudice ..................................................................... 14

        1. Plaintiffs Improperly Seek Dismissal to Avoid an Adverse Ruling on the Merits ......................................... 16

        2. Voluntary Dismissal is Inappropriate at this Late Stage .......... 18

        3. The Reasons That Plaintiffs Provide for Voluntary Dismissal Themselves Demonstrate Prejudice and That Plaintiffs Have Been Dilatory With Respect to Their Litigation Strategy ........................................................... 20

    B. In the Alternative, the Court Should Condition a Voluntary Dismissal on the Payment of Costs and Attorneys' Fees ................... 21

IV. CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Holdings LLC v. Navasca*,
   2013 WL 1748011 (N.D. Cal. Apr. 23, 2013) ............................................. 15, 16

*Beard v. Sheet Metal Workers Union*,
   908 F.2d 474, 476 (9th Cir. 1990) ........................................................................ 22

*Bennett v. Dhaliwal*,
   721 Fed. Appx. 577 (9th Cir. 2017) .................................................................... 20

*eDrop-Off Chicago LLC v. Burke*,
   No. 12-CV-4095-GW-FMo, 2012 WL 12896520 (June 1, 2012)
   (Wu, J.) ................................................................................................................. 15

*eDrop-Off Chicago LLC v. Burke*,
   No. 12-CV-4095-GW-FMO, Dkt. No. 42, Ruling Re: Plaintiff's Ex
   Parte Application to Dismiss Defendant Midley Inc .......................................... 15

*Eon Corp IP Holdings LLC v. Apple*,
   No. 14-CV-05511 (WHO), 2015 WL 4914984 (N.D. Ca. 2015) ...................... 21

*Ferguson v. Eakle*,
   492 F.2d 26 (3d Cir. 1974) .................................................................................. 18

*Hanginout, Inc. v. Google, Inc.*,
   2015 WL 11254688 (S.D. Cal. Apr. 22, 2015) ................................................... 18

*Ingham v. Johnson & Johnson*,
   Case No. 1522-CC10417 ........................................................................................ 3

*IP Glob. Inv. Am., Inc. v. Body Glove Ip Holdings, LP*,
   2019 WL 121191 (C.D. Cal. Jan. 7, 2019) .............................................. 15, 16, 19

*IXIA v. Mitchell*,
   2009 WL 10674095 (C.D. Cal. July 8, 2009) ..................................................... 19

*Kern Oil and Refining Co. v. Tenneco Oil Co.*,
   792 F. 2d 1380 (9th Cir. 1986) ........................................................................... 21

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

*Lynch v. Harris*,
    132 F.3d 39 (9th Cir. 1997) ........................................................................ 15

*Microhits, Inc. v. Deep Dish Prod., Inc.*,
    2011 WL 13143434 (C.D. Cal. Jan. 6, 2011) ............................................ 15

*MJC Am. Ltd. v. Gree Elec. App. of Zhuhai*,
    2015 WL 12743880 (C.D. Cal. Apr. 14, 2015) ......................................... 20

*In re Sizzler Rest. Intern., Inc.*,
    262 B.R. 811 (C.D. Cal. 2001) .......................................................... 15, 16

*Smith v. Lenches*,
    263 F.3d 972 (9th Cir. 2001) ...................................................................... 19

*Stewart v. U.S. Bancorp*,
    297 F.3d 953 (9th Cir. 2002) ...................................................................... 14

*Tahaya Mirs Inv. Inc. v. Helwan Cement Co. S.A.E.*,
    No. 2:16-cv-01001-CAS(AFMx), Dkt. 119 & 2016 WL 6744902 ................... 22

*Westlands Water Dist. v. U.S.*,
    100 F.3d 94, 97 (9th Cir. 1996) .................................................................. 21

*White v. Donley*,
    2008 WL 4184651 (C.D. Cal. Sept. 4, 2008) ........................................... 19

*Woodfin Suite Hotels, LLC v. City of Emeryville*,
    2007 WL 81911 (N.D. Cal. Jan. 9, 2007) ................................................ 21

*Zanowick v. Baxter Healthcare Corp.*,
    850 F.3d 1090 (9th Cir. 2017) .................................................................... 19

**Statutes**

27 CCR § 25705 ............................................................................................ 17

27 CCR §25904 ............................................................................................ 10

27 CCR § 25721 ................................................................................. 12, 13, 17

27 CCR § 25900 ..................................................................................... 11, 16

Business & Professions Code § 17200 ................................................... 3, 4

- iii -

Business & Professions Code § 17500 ................................................................. 3, 4

Cal. Health & Safety Code § 25249.7 ................................................................. 3, 14

Cal. Health & Safety Code § 25249.6 ................................................................. 3

**Other Authorities**

Fed. R. Evid. 403 ................................................................................................. 20

Fed. R. Civ. P. 12 ................................................................................................. 4

Fed. R. Civ. P. 16 ............................................................................................. 4, 22

Fed. R. Civ. P. 25 ........................................................................................... 19, 20

Fed. R. Civ. P. 26 ............................................................................................. 5, 22

Fed. R. Civ. P. 41 ............................................................................................. 1, 14

## I.      **INTRODUCTION**

Plaintiffs provide no good reason for this Court to grant their Motion for Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(2) (the "Motion").  A voluntary dismissal at this end-stage of the litigation will cause Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI") plain legal prejudice.  For that reason, the Motion should be denied.

The Lanier Law Firm commenced this action as a transparent tactical maneuver to improve their litigation position in personal injury actions that they have pending against Defendants across the country.  They saw Proposition 65 as a potential vehicle to obtain a court-ordered cancer warning on Defendants' talcum powder products – a warning that the Federal Food and Drug Administration twice found unwarranted.  *See* Declaration of Elyse Echtman ("Echtman Decl.") at ¶¶  3-4, Exs. A-B.

Before filing this case, the Lanier Law Firm's own website represented that current talcum powder products are safe.  *Id.* at ¶ 5, Ex. C.  Another personal injury plaintiffs' firm conceded in closing arguments that Defendants' current talc source is asbestos-free.  *Id.* at ¶ 6, Ex. D.  Plaintiffs also had laboratory results showing that the regular quarterly talc testing that Defendants perform in the ordinary course of business has repeatedly and consistently confirmed no asbestos detected in the talc.  Plaintiffs' own go-to microscopy expert testified, before having been hired for talcum powder litigation, that the claim that cosmetic talcum powder products contain asbestos is an "urban legend."  *Id.* at ¶ 7, Ex. E.[1]  Until he was hired by plaintiffs' lawyers pursuing talc cases, he had never detected asbestos in cosmetic talc.  *Id.*

Against that factual backdrop, approximately two years ago, Plaintiffs commenced the steps necessary to institute a Proposition 65 action against

---

[1]    *See* Exhibit E (155:8-13).

Defendants.  They assert in this action that a Proposition 65 warning is required for current Johnson's Baby Powder ("JBP") and Shower to Shower ("STS") products, on the grounds that the products allegedly contain "asbestos" and "talc containing asbestiform fibers."  Plaintiffs have pursued these claims through fact discovery and three rounds of expert disclosures.  Now, with a fully developed record that shows what Plaintiffs have known all along – that the products are safe – they ask the Court to voluntarily dismiss so that they can try again.  Plaintiffs seek a voluntary dismissal for the patently improper reason of avoiding an inevitable adverse ruling on the merits.

A voluntary dismissal is inappropriate when a case is at the summary judgment stage and headed to trial.  Plaintiffs apparently are dissatisfied with the record that they developed and strategic decisions that they made, which is why they seek Court permission for a complete do-over.  They claim that they want to (1) perform additional fact investigation; (2) join additional defendants; and (3) potentially expand the scope of their Proposition 65 claims to include more substances.  *See* Motion, Dkt. No. 96.  The time for that investigation and those strategic decisions has long-passed.  Defendants have devoted substantial resources to the defense of this case and are ready for a binding merits determination in their favor that no cancer warning should be put on their products.

For all of these reasons, this Court should deny Plaintiffs' Motion.  In the alternative, this Court should make a dismissal contingent upon the prior payment of Defendants' costs and attorneys' fees, to reimburse Defendants for the substantial amounts of money spent to defend this litigation that Plaintiffs chose to abandon at the eleventh hour.

## II.   PROCEDURAL HISTORY

Plaintiffs began setting the groundwork for this case approximately two years ago, and this case has been actively litigated for more than one year's time, as shown by the procedural history set forth below.

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

1

### A.   Commencement of the Action

2       Plaintiffs took their first formal steps toward commencing this action in

3   August 2017.  On August 24, 2017, they served a Notice of Violation of California

4   Health & Safety Code § 25249.6 on Defendants and the Office of the California

5   Attorney General, as well as District Attorneys and City Attorneys across the state.

6   That Notice of Violation was accompanied by a Certificate of Merit of the same

7   date.  Pursuant to Proposition 65, an investigation is required prior to execution of a

8   Certificate of Merit.  Cal. Health & Safety Code § 25249.7(d)(1).  Plaintiffs'

9   Certificate of Merit, which is signed by one of their attorneys at the Lanier Law

10   Firm, represents that such an investigation had been done.  *Id.*  Thus, Plaintiffs

11   began their work on this matter in mid-2017, at the very latest.

12       At the time of that initial investigation, Plaintiffs' counsel already had the

13   benefit of full litigation discovery from Defendants.  For example, they are counsel

14   in *Ingham v. Johnson & Johnson*, Case No. 1522-CC10417 (22nd Judicial Circuit

15   Court of the City of St. Louis, Missouri), a case commenced in August 2015.

16   Plaintiffs' counsel has represented to this Court that they needed no further fact

17   discovery for their prosecution of this action.  *See* Plaintiffs' Reply to Defendants'

18   Opposition to Plaintiffs' Motion for an Order Modifying Scheduling Order and

19   Permitting Plaintiffs to File an Amended Complaint, Dkt. No. 90, at 2:5-6.

20       On March 6, 2018, Plaintiffs filed their Complaint in the Superior Court of

21   California, County of Los Angeles.  The Complaint asserts three causes of action

22   against Defendants for violations of Proposition 65 and Business & Professions

23   Code §§ 17200 and 17500.  All claims are premised on an alleged failure to warn as

24   required by Proposition 65.  Plaintiffs assert that the JBP and STS products contain

25   two Proposition 65 scheduled chemicals, asbestos and "talc containing asbestiform

26   fibers," in excess of applicable "no significant risk levels."  Plaintiffs served the

27   Complaint on JJCI on May 2, 2018, and on J&J on May 4, 2018.

28

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-cv-04830-gw(ksx)

### B. Removal to This Court

On May 31, 2018, Defendants removed the action to this Court based on diversity jurisdiction. *See* Notice of Removal, Dkt. No. 1. Plaintiffs moved for remand on the primary grounds that they purportedly had no injury in fact to support Article III standing. *See* Motion to Remand, Dkt. No. 27. Plaintiffs made this argument notwithstanding that the Complaint expressly alleges "injury in fact." *See* Defendants' Opposition to Plaintiffs' Motion to Remand, Dkt. No. 36, 1:2-12; 4:3-13; *see also* Minutes of Plaintiffs' Motion to Remand Case to the Superior Court of California, Dkt. No. 39. Following the Court's denial of Plaintiffs' remand motion, Plaintiffs informed Defendants' counsel that they intended to amend the complaint to remove the claims brought under California Business & Professions Code §§ 17200 and 17500, and once again move for remand back to state court. Echtman Decl. at ¶ 8, Ex. F. However, they did not do so. Plaintiffs opted to continue litigating this matter in this Court.

### C. Defendants' Motion to Dismiss and Answers

After removing the case, Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Complaint failed to meet *Iqbal/Twombly* pleading standards, and contained insufficient conclusory allegations about purported asbestos content in present-day talc products that should not be credited. *See* Motion to Dismiss, Dkt. No. 20. As set forth above, Plaintiffs' counsel previously had conceded that cosmetic talc products currently on the market are safe. *See* Echtman Decl. at ¶ 5, Ex. C. The Court denied the motion, on September 18, 2018, finding that the allegations were sufficient at this stage of the case.

Defendants each filed an Answer to the Complaint on October 2, 2019. *See* Dkt. Nos. 45-46.

### D. The Court-Ordered Case Schedule

The Court held a Rule 16 conference on November 8, 2018 that was attended

by counsel for all parties, and at which it entered a Case Management Schedule. Dkt. No. 51.  The Court's case deadlines are:  (1) fact discovery cut-off of May 10, 2019; (2) mediation cut-off of May 22, 2019; (3) mediation status conference on May 23, 2019 at 8:30 a.m.; (4) expert discovery cut-off of July 12, 2019; (5) motion hearing cut-off of September 16, 2019; (6) pretrial conference on October 3, 2019 at 8:30 a.m.; and (7) trial on October 15, 2019 at 9:00 a.m.  All of those deadlines remained intact and were met, with the exception of the expert discovery cut-off. While all expert reports have been served, Plaintiffs requested an extension of the expert discovery deadline to avoid producing their experts for deposition until after this Motion is decided.

### E.   <u>Fact Discovery</u>

The parties conducted the required Rule 26(f) conference and submitted a Joint Rule 26(f) Report.  See Joint Rule 26(f) Report, Dkt. No. 49.  The parties also served Rule 26 initial disclosures.  Defendants served document requests and requests for admission on Plaintiffs on November 23, 2018.  Plaintiffs responded to those discovery requests on December 21, 2018.

Defendants served notices of deposition for each of the seven Plaintiffs on February 28, 2019, scheduling depositions for March 21-29, 2018.  *See* Declaration of Elyse Echtman in Support of Opposition to Motion to Amend, Dkt. No. 85-2, at ¶ 21.  Plaintiffs asked that Defendants agree to adjourn the depositions to mutually agreeable dates in April 2019, and promised to provide April dates that would work for each Plaintiff.  *Id.* at ¶ 22.  At the end of March, defense counsel prompted Plaintiffs to provide the promised dates.  *Id.*  In response, Plaintiffs backtracked on their agreement, declining to provide deposition dates, and asserting that no Plaintiff depositions should take place because they had now decided to add another defendant (Valeant) to the case.  *Id.* at ¶ 23.  In view of the impending May 10, 2019 fact discovery deadline, Defendants sought relief from Magistrate Judge Stevenson, who entered an Order directing Plaintiffs to provide dates for their

depositions to take place prior to the May 10, 2019 discovery cut-off.  *Id.* at ¶ 24.

Only five of the seven Plaintiffs cooperated to sit for depositions.  At those depositions, Defendants learned that four of those five Plaintiffs did not even know that they were plaintiffs in litigation.  That testimony is set forth below:

> Q. *Are you a plaintiff in any lawsuits?*
> A. *No, ma'am.*

Echtman Decl. at ¶ 9, Ex. G (Deposition of Margaret Reed, 13:16-17) (emphasis added).

> Q *Are you a plaintiff in any lawsuits?*
> …
> A *No.*

*Id.* at ¶ 10, Ex. H (Deposition of Alexandra Hanks-Caldwell, 17:20-22) (emphasis added).

> Q. BY MS. NAHABET: *Are you suing anybody in litigation?*
> …
> THE WITNESS: *I'm not really suing anybody.* I
> fell at work and I had to do an IA, I had to tell them
> that I fell. Well, because I broke my elbow so I had to
> tell them I fell. So they did -- so they have somebody
> that's trying to get me to the doctors and stuff.
> That's it.
> …
> Are you suing anybody in relation to that fall
> that you just mentioned?
> A. No.
> Q. Do you know if you're suing anybody else?
> A. No.
> Q. So you haven't sued anyone relating to your
> ovarian cancer?
> A. No.

*Id.* at ¶ 11, Ex. I (Deposition of Hermelinda Luna, 25:7-26:1) (emphasis added).

> Q. *Are you a plaintiff in any lawsuits?*
> …
> THE WITNESS: *No, ma'am.*
> …

- 6 -

1        Q. Have you sued anyone relating to your
2    ovarian cancer?
     …
3    THE WITNESS: No, ma'am.

4    *Id.* at ¶ 13, Ex. K (Deposition of Becky Canzoneri, 37:7-14) (emphasis added).

5        In addition, none of them had seen the Complaint. *Id.* at ¶¶ 9-13.[2]  Most of

6    them had never heard of Proposition 65 and were not aware of its warning

7    requirements.

8        Q. *Are you familiar at all with something
     known as Proposition 65 in California?*
9        A. *No.*

10   *Id.* at ¶ 9, Ex. G (Deposition of Margaret Reed, 33:25-34:2) (emphasis added).

11       Q. *Are you familiar with Proposition 65?*
12       A. *No.*

13   *Id.* at ¶ 11, Ex. I (Deposition of Hermelinda Luna, 64:25-65:1) (emphasis added).

14       Q. Ms. Canzoneri, are you familiar with
15   Proposition 65?
         A. Somewhat.
16       Q. *What do you know about Proposition 65?*
17       A. *That it is not good for you.*
         Q. Do you know anything else about
18   Proposition 65?
19       A. I don't know.
         Q. Are you familiar with the Proposition 65
20   warning?
21       A. Yes.
         Q. *What do you know about the Proposition 65
22   warning?*
23       A. *I don't know, ma'am.*

24   *Id.* at ¶ 13, Ex. K (Deposition of Becky Canzoneri, 59:16-60:4) (emphasis added).

25       When they were shown the Complaint, the individuals were under the

26

27   _____

2    *See* Exhibit G (Deposition of Margaret Reed, 38:8-10); Exhibit H (Deposition of
     Alexandra Hanks-Caldwell, 66:1-4, Ex. 1); Exhibit I (Deposition of Hermelinda
     Luna, 79:9-13, Ex. 2); Exhibit J (Deposition of Ethel Herrera, 81:14-21, Ex. 1);
28   and Exhibit K (Deposition of Becky Canzoneri, 66:20-23, Ex. 1).

misimpression that it sought personal injury damages for ovarian cancer.  *Id.* at ¶¶ 9-10, 12-13.[3]  Not one of the five Plaintiffs who was deposed had undertaken a search for responsive documents and things in response to Defendants' document requests.  *Id.* at ¶¶ 9-13.[4]  In fact, none of those Plaintiffs was aware that Defendants had propounded discovery requests.  *Id.*

**F.   Expert Discovery**

The parties stipulated to a staggered expert disclosure schedule.  That schedule provided that (1) Plaintiffs serve expert disclosures on exposure on February 7, 2019 (Dkt. No. 58); (2) Defendants serve rebuttal expert reports on exposure and the "no significant risk level" on April 22, 2019 (Dkt. No. 67); and (3) Plaintiffs serve rebuttal reports on the "no significant risk level" on June 6, 2019.  *Id.*

**1.   Plaintiffs' Initial Expert Disclosure**

On February 7, 2019, Plaintiffs produced an "Analysis of Johnson & Johnson Baby Powder and Valeant Shower to Shower Talc Products for Amphibole Asbestos" from William E. Longo, Ph.D ("Longo Expert Report"), a microscopy expert whom plaintiffs' counsel regularly relies upon in talc personal injury litigation.  Echtman Decl. at ¶ 14, Ex. L.  In Dr. Longo's report, he presents results of his laboratory's testing of 14 bottles of JBP.  Six of the 14 JBP bottles were purchased by plaintiffs' lawyers off-the-shelf in 2016 and 2017.  Dr. Longo's test results for *all six* of those sealed off-the-shelf bottles *show no asbestos detected*.  *Id.* at pgs. 89-112.  Dr. Longo similarly detected *no asbestos* in another four unsealed

---

[3]  *See* Exhibit G (Deposition of Margaret Reed, 40:25-41-4); Exhibit H (Deposition of Alexandra Hanks-Caldwell, 70:7-12); Exhibit J (Deposition of Ethel Herrera, 85:10-12); and Exhibit K (Deposition of Becky Canzoneri, 72:16-18).

[4]  *See* Exhibit G (Deposition of Margaret Reed, 59:20-61:21; 63:20-64:11); Exhibit H (Deposition of Alexandra Hanks-Caldwell, 95:12-96:24; 97:25-98:15); Exhibit I (Deposition of Hermelinda Luna, 127:4-128:17; 131:6-23); Exhibit J (Deposition of Ethel L. Herrera, 105:9-107:22; 109:3-110:11); and Exhibit K (Deposition of Becky Canzoneri, 110:2-111:10; 115:15-116:11).

JBP bottles that lawyers had obtained from plaintiffs in personal injury actions against Defendants.  *Id.* at pgs. 114-129.  Dr. Longo claims to have detected asbestos in four of the 14 JBP bottles that he tested, which are also unsealed bottles obtained from personal injury plaintiffs.  *Id.* at pgs. 131-142.[5]  Dr. Longo's laboratory assistants made 100 observations for each of those four bottles using the transmission electron microscopy testing method, with 99 of 100 observations reported as non-detects, and only one observation for each reported as finding a single trace microscopic asbestos "fiber" or "bundle."  *Id.*

Dr. Longo also tested four Valeant STS products that were not manufactured or sold by these Defendants.  With respect to those four bottles, two were purchased by plaintiffs' lawyers off-the-shelf in 2016 and 2017.  Dr. Longo claims to have detected asbestos in one of those two bottles.  *Id.* at pages 144-156.  He also claims to have detected asbestos in two STS bottles obtained from personal injury plaintiffs.  Plaintiffs have described one of the STS bottles as a JJCI product, but Defendants' fact investigation has shown that it is actually a Valeant product.  *See id.* at ¶ 15, Ex. M (Declaration of Doyle S. Freeman dated May 9, 2019 at 2:17-20).

Dr. Longo relies on his collective test results for these 18 JBP and STS bottles to opine on supposed asbestos exposure from JBP and STS usage.  He performed his own exposure estimates relying upon two inhalation exposure studies that he had previously performed in connection with other litigation using other bottles that had been purchased on eBay.[6]  *Id.* at ¶ 14, Ex. L, pgs. 82, 84-87.  Dr. Longo extrapolated from his prior studies to opine that a typical consumer using JBP or STS today would be exposed to asbestos in excess of the established Proposition 65 "no significant risk level" or "safe harbor" of 100 fibers inhaled per

---

[5]  As noted below, Defendants dispute all of Dr. Longo's purported detections of asbestos.  There is no asbestos in the talc.

[6]  Defendants' investigation has exposed that one of the products Dr. Longo used in his inhalation exposure studies was purchased from the father of an attorney at a plaintiff-side law firm pursuing talc personal injury litigation.

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

1    day.  *Id.* at pgs. 86-87.

2         Dr. Longo's report contains no observations or opinions on "talc containing

3    asbestiform fibers," which the International Agency for Research on Cancer defines

4    as something distinct from asbestos.[7]  Dr. Longo claims to have detected "fibrous

5    talc" in two JBP bottles that he dates from 2004 and 2006, but he does not opine

6    that this "fibrous talc" is asbestiform or might somehow qualify as "talc containing

7    asbestiform fibers."  *Id.* at pgs. 117 & 125.

8              **2.    Defendants' Expert Disclosures**

9         On April 22, 2019, Defendants served eight expert reports.  Defendants'

10   experts rebut Dr. Longo's opinions, show that there is no asbestos in Defendants'

11   products and show that the products pose no cancer risk.  Those eight experts are:

12   (1) Dr. Gregory B. Diette, MD, MHS (opining that cosmetic talcum powder

13   products pose no cancer risk); (2) Dr. Robert Downs, Ph.D. (detecting no asbestos

14   in JBP using state of the art testing); (3) Dr. M. Darby Dyar, Ph.D. (opining that Dr.

15   Longo's testing is unreliable and does not comply with generally accepted testing

16   methods); (4) Dana M. Hollins, MPH, CIH (opining that no Proposition 65 warning

17   is warranted); (5) Dr. Brooke T. Mossman, Ph.D. (opining that cosmetic talcum

18   powder products present no cancer risk); (6) Michael Peterson, MEM, DABT

19   (opining that no Proposition 65 warning is warranted); (7) Dr. Cheryl C. Saenz, MD

20   (opining that perineal exposure to cosmetic talcum powder presents no cancer risk);

21   and (8) Dr. Matthew Sanchez, Ph.D. (detecting no asbestos in JBP using generally

22   accepted testing methods and showing that Dr. Longo's testing is unreliable and

23

---

24   [7]  "Talc may . . . form true mineral fibres that are asbestiform in habit. . . . Talc
     containing asbestiform fibres is a term that has been used inconsistently in the
25   literature.  In some contexts, it applies to talc containing asbestiform fibres of talc
     or talc intergrown on a nanoscale with other minerals, usually anthophyllite.  In
26   other contexts, the term . . . has erroneously been used for talc products that
     contain asbestos.  Similarly, the term asbestiform talc has erroneously been used
27   for talc products that contain elongated mineral fragments that are not
     asbestiform."  (IARC 2012, Volume 100 C at 230).  California relies upon IARC
28   in determining whether a substance should be included on the Proposition 65 list.
     27 CCR §25904(b).

1    does not comply with generally accepted testing methods).

2         The reports from Defendants' Industrial Hygiene experts, Dr. Hollins and

3    Mr. Peterson, show that Dr. Longo made glaring data errors in his exposure

4    analysis.  When those experts followed Dr. Longo's methodology, accepting all of

5    Dr. Longo's test results as true (notwithstanding that Defendants dispute those

6    results), but correcting Dr. Longo's data errors, they found that any claimed

7    asbestos exposure is decidedly below the established California safe harbor level of

8    100 fibers inhaled per day.  When Dr. Longo's data errors are corrected, his

9    methodology results in an average exposure at no more than half of the safe harbor

10   level.  Echtman Decl. at ¶¶ 16-17, Exs. N-O.  An exposure below the safe harbor

11   does not require a Proposition 65 warning as a matter of law.

12        Defendants also included expert reports on their own affirmative asbestos

13   testing from Dr. Sanchez of R.J. Lee Group and Dr. Downs of the University of

14   Arizona.  Dr. Sanchez's report details regular quarterly testing that R.J. Lee has

15   been performing for JJCI in the ordinary course of business since 2009.  It shows

16   that the R.J. Lee laboratory is accredited to perform asbestos testing on bulk

17   materials by a nationally recognized accreditation organization, that R.J. Lee has

18   regularly tested JJCI's talc for asbestos using accredited methodology, and that all

19   reported test results have been negative for asbestos content.  *See* 27 CCR § 25900;

20   Echtman Decl. at ¶ 18, Ex. P, pg. 194.  For purposes of this litigation, Dr. Sanchez

21   also tested 12 sealed off-the-shelf JBP bottles.  No asbestos was detected in any of

22   those 12 bottles.  *Id.* at pgs. 194-195.

23        Dr. Downs independently tested another five sealed off-the-shelf JBP bottles

24   using state of the art methods and equipment.  He detected no asbestos in any of

25   those bottles.  *Id.* at ¶ 19, Ex. Q.

26              **3.    Plaintiffs' Rebuttal Expert Disclosures**

27        On June 6, 2019, Plaintiffs served two rebuttal expert disclosures, from Dr.

28   Longo and Dr. David Egilman.  Dr. Longo's Rebuttal Expert Report presents a new

1   and revised exposure analysis that includes data from a recently conducted

2   exposure study (that Dr. Longo did not produce).  Dr. Longo's revised exposure

3   analysis shows potential asbestos exposure levels that are even lower than his

4   original exposure analysis, and that are far below the Proposition 65 safe harbor

5   level of 100 fibers inhaled per day.

6          In Dr. Longo's Rebuttal Expert Report, he opines that daily personal use of

7   JBP and STS products results in average asbestos exposure of 23 fibers inhaled per

8   day.  *Id.* at ¶ 20, Ex. R, pg. 249.  That exposure level is less than one-quarter of the

9   safe harbor level of 100 fibers inhaled per day.

10         Dr. Longo further opines that, if a person uses JBP in connection with

11  diapering a baby five times per day, it will result in an average asbestos exposure of

12  115 fibers inhaled in that day.  *Id.*  In providing that opinion, Dr. Longo neglects to

13  take into account that daily exposure rates are averaged over the course of a 70-year

14  lifetime for Proposition 65 purposes.  *See* 27 CCR § 25721(c)-(d).  If you assume

15  that a typical baby powder user has two children, and diapers each of them five

16  times daily, for a total of four years of baby diapering, Dr. Longo's opinion

17  extrapolates to an average of 7 fibers inhaled per day.  *Id.* at ¶¶ 21-22, Ex. S, pg.

18  266; Ex. T, pgs. 274, 276, 278.  This number is far below the safe harbor level.

19         **G.   The Court-Ordered Mediation**

20         On May 13, 2019, the parties participated in a half-day private mediation at

21  JAMs in New York before the Hon. Helen Freedman, ret'd, in accordance with this

22  Court's order referring the parties to private mediation.  Dkt. No. 51.  On May 23,

23  2019, the parties appeared before the Court for a post-mediation status conference.

24         **H.   Plaintiffs' Motion to Amend and Add Valeant as a Defendant**

25         On April 18, 2019, Plaintiffs filed a Motion for Leave to File Amended

26  Complaint, seeking to add Valeant, the current manufacturer of STS, as a party and

27  to extend the case schedule to accommodate that addition.  Dkt. No. 70.

28  Defendants opposed the motion on grounds that Plaintiffs cannot show "good

- 12 -

cause" for the amendment, because they knew or should have known about Valeant's 2012 purchase of the STS product line since long before this case was commenced.  Dkt. No. 85.  The motion is fully briefed, notwithstanding that Plaintiffs filed their reply papers ten days after the May 24, 2019 due date.  Dkt. No. 87; Dkt. No. 90.  Plaintiffs now seek to abandon that motion, opting to achieve the same result with a voluntary dismissal.

## I.  <u>The Motion for Voluntary Dismissal</u>

Plaintiffs provide inappropriate reasons for this dismissal Motion.  They explain that they want a voluntary dismissal in order to commence a new action that includes Valeant and Claire's Stores as additional defendants.  But, Defendants would be prejudiced in defending a case that involves defendants that sell different products with different ingredients.  Under Proposition 65, a defendant is only responsible for its own products and not for "exposure to a listed chemical from any other source or product."  27 CCR § 25721.

Plaintiffs presumably want to include Claire's Stores because FDA-sponsored testing detected asbestos in three Claire's powder-based cosmetics.  The FDA issued an alert on March 5, 2019 advising consumers not to use Claire's cosmetic products.  *See* https://www.fda.gov/cosmetics/cosmetics-recalls-alerts/fda-advises-consumers-stop-using-certain-cosmetic-products.  *Notably, the FDA's testing of JBP has not detected any asbestos and the FDA has never issued such an alert for JBP.*  Echtman Decl. at ¶ 23, Ex. U.

Introduction of evidence about Claire's products in an action against Defendants would be unfairly prejudicial.  Those products have no relevance to JBP.  The talc source and supplier for those products has not been shown.

Similarly, the testing that Dr. Longo performed on Valeant STS products should not be admissible in an action against Defendants who are not responsible for the manufacture or sale of those products, even if the talc may once have come from the same source mine.

1    Plaintiffs further state that they may want to add claims about additional

2    substances allegedly within the talc, representing that:  "[t]here may also be

3    evidence of additional violating substances."  Motion, Dkt. No. 96 at 3 (emphasis

4    removed).  Through the extensive discovery they have taken in other litigation,

5    Plaintiffs' counsel is well-aware of JBP's composition.  For example, in prior

6    deposition testimony from September 2018, Plaintiffs' expert Dr. Egilman stated

7    his belief that arsenic and lead content in talc requires a Proposition 65 warning.

8    Echtman Decl. at ¶¶ 24-25, Exs. V-W.[8]  In that September 2018 time frame,

9    Plaintiffs still had the option to amend their Complaint in this case.  They made a

10   conscious choice not to include arsenic and lead in this Proposition 65 action.  To

11   allow them to change course at this late date will prejudice Defendants.

12   **III.   ARGUMENT**

13          **A.    The Motion Should be Denied Because a Dismissal Will Result In
             Legal Prejudice**
14

15   A plaintiff may unilaterally dismiss an action without a court order by filing

16   a notice of dismissal before an opposing party serves either an answer or a motion

17   for summary judgment.  Fed. R. Civ. P. 41(a)(1)(A)(i).  After that preliminary

18   stage, absent a stipulation, a court order is required to voluntarily dismiss.  Fed. R.

19   Civ. P. 41(a)(2).

20   A Rule 41(a)(2) dismissal will be without prejudice, unless the Court states

21   otherwise in its order.  A "dismissal with prejudice" ordinarily represents a "final

22   judgment on the merits" with *res judicata* effect.  *Stewart v. U.S. Bancorp*, 297

23   F.3d 953, 956 (9th Cir. 2002) (citations omitted).  However, in this case, which was

24   brought by private plaintiffs in the public interest, the individual Plaintiffs lack

25   authority to agree to a dismissal that would have *res judicata* effect on a

26   subsequently filed Proposition 65 action.  *See* Cal. Health & Safety Code

27

28   _____
     [8]   *See* Exhibit V (36:13-21); Exhibit W (325:21-326:6).

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

§ 25249.7(f)(4) (persons bringing actions in the public interest may only effect "a voluntary dismissal in which no consideration is received from the defendant" without prior notice to the Attorney General and fact-finding by the Court). Therefore, any voluntary dismissal, even one seemingly "with prejudice" as to these Plaintiffs, is effectively without prejudice to duplicative Proposition 65 litigation against Defendants.

Black letter law holds that a motion for voluntary dismissal should be denied when the dismissal will cause the defendant plain legal prejudice. *eDrop-Off Chicago LLC v. Burke*, No. 12-CV-4095-GW-FMo, 2012 WL 12896520, at *1 (June 1, 2012) (Wu, J.) (denying *ex parte* motion for voluntary dismissal on legal prejudice grounds) (citations omitted).[9]  "Legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument," and includes "loss of a federal forum." *Id.*  Where the voluntary dismissal is sought to "avoid an adverse determination on the merits," there is plain legal prejudice. *IP Glob. Inv. Am., Inc. v. Body Glove Ip Holdings, LP*, 2019 WL 121191, at *4 (C.D. Cal. Jan. 7, 2019) (citing *AF Holdings LLC v. Navasca*, 2013 WL 1748011, at *3 (N.D. Cal. Apr. 23, 2013)); *In re Sizzler Rest. Intern., Inc.*, 262 B.R. 811, 823 (C.D. Cal. 2001) ("An attempt to avoid an adverse decision on the merits may constitute legal prejudice.").

Courts commonly consider four additional factors in analyzing legal prejudice that include: (1) defendant's efforts and expenses incurred in preparing for trial, (2) plaintiff's diligence in prosecuting her claims, (3) plaintiff's explanation of the need to dismiss, and (4) the status of the litigation. *Microhits, Inc. v. Deep Dish Prod., Inc.*, 2011 WL 13143434, at *2 (C.D. Cal. Jan. 6, 2011). The court may consider the "cumulative weight" of all of these factors in assessing prejudice. *See Lynch v. Harris*, 132 F.3d 39, at *1 (9th Cir. 1997) (mem. disp.)

---

[9]  *See also eDrop-Off Chicago LLC v. Burke*, No. 12-CV-4095-GW-FMO, Dkt. No. 42, Ruling Re: Plaintiff's Ex Parte Application to Dismiss Defendant Midley Inc. dba Purseblog.com (C.D. Cal. June 12, 2012) (final determination denying ex parte application for motion for voluntary dismissal).

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

(district court did not abuse its discretion in denying motion to dismiss in light of plaintiff's "repeated dilatory tactics").

Plaintiffs improperly request dismissal to avoid an adverse ruling on the merits, which alone warrants denial of the motion.  In addition, the cumulative weight of all other relevant factors demonstrates plain legal prejudice, because (1) Defendants have devoted substantial effort and expense to defending the case and preparing for trial; (2) Plaintiffs waited far too long to make strategy changes on the parties to join and substances to put at issue; (3) Plaintiffs' explanation for the dismissal lacks merit and signals that they intend to engage in improper forum-shopping; and (4) the litigation is close to trial-ready.

### 1. Plaintiffs Improperly Seek Dismissal to Avoid an Adverse Ruling on the Merits

This case is ripe for summary disposition in Defendants' favor.  For that reason, Defendants would suffer plain legal prejudice if the Court were to allow Plaintiffs to voluntarily dismiss.  It is well-established that the Court should deny a motion for voluntary dismissal when the purpose is to avoid, as is plainly the case here, an adverse determination on the merits of the action.  8-41 Moore's Fed. Prac. Civ. § 41.40[7][b][v].  A dismissal for the purpose of staving off a merits loss creates plain legal prejudice to the defendant.  *IP Glob. Inv. Am., Inc. v. Body Glove Ip Holdings, LP*, 2019 WL 121191, at *4 (citing *AF Holdings LLC v. Navasca*, 2013 WL 1748011, at *3); *In re Sizzler Rest. Intern., Inc.*, 262 B.R. 811, 823 (C.D. Cal. 2001) ("An attempt to avoid an adverse decision on the merits may constitute legal prejudice.").

The case record shows that Defendants have multiple grounds for summary judgment in their favor.  First, Defendants' own quarterly asbestos testing with R.J. Lee Group in the ordinary course of business demonstrates that they are entitled to judgment as a matter of law.  Pursuant to 27 CCR § 25900, "no knowing and intentional exposure occurs if a [company] in the course of doing business" can

show that (a) it tested for the chemical in question within the year prior to the filing of the notice or complaint (*id.* at § 25900(a)(1)); (b) the testing was performed by a laboratory certified or accredited by a nationally recognized accrediting organization to perform the method of detection (*id.* at § 25900(a)(3)); and (c) all of the reported test results show that the chemical in question was not detected (*id.* at § 25900(a)(4)).  On a quarterly basis from 2009 forward, as part of its quality assurance procedures, JJCI has had R.J. Lee Group, a laboratory accredited to perform asbestos testing, test JJCI's talc supply for asbestos.  All of those quarterly test results have shown no asbestos detected.  Based on that testing record, which is detailed in Dr. Sanchez's expert report, Defendants are entitled to judgment in their favor.  *See* Echtman Decl. at ¶ 18, Ex. P.

Second, the exposure opinions of Plaintiffs' own expert, Dr. Longo, show that, even accepting Dr. Longo's claimed asbestos detections (which Defendants dispute), any potential exposure from JBP or STS usage is far below California's established safe harbor of 100 fibers inhaled per day.  *See* 27 CCR § 25705 (b)(1) ("The following levels . . . shall be deemed to pose no significant risk:  : . . . Asbestos 100 fibers inhaled/day.").  As set forth above, Dr. Longo opines in his rebuttal report that an average exposure from personal JBP or STS application is 23 fibers inhaled per day – less than one-quarter of the safe harbor level.  Echtman Decl. at ¶ 20, Ex. R, pg. 249.  Dr. Longo's opinion on baby diapering exposure extrapolates to approximately 7 fibers inhaled per day over a 70-year lifetime.  *See* 27 CCR § 25721(c) ("[T]he level of exposure . . . shall be determined by multiplying the level in question . . . times the reasonably anticipated rate of exposure for an individual . . . measured over a lifetime of seventy years.") and (d)(4) ("[F]or exposures to consumer products, lifetime exposure shall be calculated using the average rate . . . of intake or exposure for average users of the consumer product.").  Even if one were to add together Dr. Longo's personal use and baby diapering numbers, the exposure is only 30 fibers inhaled per day.  Accepting the

1  facts in the light most favorable to Plaintiffs shows that JBP requires no cancer

2  warning as a matter of law.

3       Third, Plaintiffs have abandoned their assertion that the products contain

4  "talc containing asbestiform fibers."  Dr. Longo's initial report contains no opinions

5  on detection of "talc containing asbestiform fibers" as defined by IARC.  For that

6  reason, Defendants are entitled to summary judgment on Plaintiffs' claims

7  concerning "talc containing asbestiform fibers."

8       Fourth, the record supports summary judgment in Defendants' favor on

9  Plaintiffs' claims that Defendants are responsible for alleged asbestos exposure

10  from any STS products.  JJCI sold the STS product line to Valeant in September

11  2012 -- more than six years ago.  Defendants did not sell the STS product within

12  the statute of limitations period and Plaintiffs have no evidence that any STS

13  product manufactured or sold by Defendants has been available for sale in

14  California within that time period.

15       With the fact and expert records closed, and the merits so definitively in

16  Defendants' favor, Defendants would suffer plain legal prejudice if the Court were

17  to dismiss the case before reaching a dispositive determination in this action.

18  Accordingly, the Court should deny Plaintiffs' motion to dismiss.

19       **2.   Voluntary Dismissal is Inappropriate at this Late Stage**

20       Voluntary dismissal is inappropriate when a case has been fully litigated and

21  is practically ready for trial.  *See Ferguson v. Eakle*, 492 F.2d 26 (3d Cir. 1974)

22  (abuse of discretion to allow dismissal after discovery was closed and parties were

23  headed to final pretrial conference).  Courts have found legal prejudice justifying

24  denial of a voluntary motion to dismiss where significant discovery or pretrial

25  preparations have taken place.  *Hanginout, Inc. v. Google, Inc.*, 2015 WL

26  11254688, *4-6 (S.D. Cal. Apr. 22, 2015) (denying voluntary motion to dismiss

27  where significant discovery or pretrial preparations have taken place).  All of these

28  factors together constitute more than sufficient legal prejudice justifying a denial of

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

1    Plaintiffs' Motion.

2          Dismissal here is inappropriate considering "the late stage of the

3    proceedings," the Plaintiffs' "benefit of discovery and opportunity to develop

4    supports for [their ]claim[s]," the Defendants' "investment of resources in

5    defending the litigation," and the "election to dismiss [their claims] rather than

6    oppose . . . a summary judgment motion." *IP Glob. Inv. Am., Inc.*, 2019 WL

7    121191, at \*4. *See also*, *White v. Donley*, 2008 WL 4184651, at \*3 (C.D. Cal. Sept.

8    4, 2008) (denying motion to dismiss where action had been pending for nearly three

9    years, defendant had expended considerable efforts in defending it, and dismissal

10   would circumvent defendant's pending dispositive motion); *IXIA v. Mitchell*, 2009

11   WL 10674095, at \*2-3 (C.D. Cal. July 8, 2009) (denying motion where the action

12   was two and a half months away from trial, plaintiff had delayed proceedings by

13   failing to appear at a scheduling conference and allegedly failing to engage in

14   discovery, and had failed to explain why a dismissal was necessary).

15         The cases Plaintiffs cite in support of their Motion are inapposite.  Unlike the

16   instant action, the *Smith* case involved existing parallel state and federal actions.

17   *Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001).  The federal claims were

18   voluntarily dismissed *with* prejudice, preventing the federal claims from being

19   litigated in the future.  *Id.*  The dismissal had no impact on the state court case, and

20   would not have been an extra burden to the defendant since it was already engaged

21   in defending the state court action.  *Id.*  Moreover, in *Smith*, discovery had not yet

22   started, whereas here, fact discovery has closed and expert discovery is nearly

23   complete.

24         In the case of *Zanowick*, the court held that dismissal was warranted

25   notwithstanding plaintiff's failure to comply with a 90-day time limit for filing a

26   motion for substitution of a deceased party pursuant to Rule 25(a)(1).  *Zanowick v.*

27   *Baxter Healthcare Corp.*, 850 F.3d 1090 (9th Cir. 2017).  There, the trial court did

28   not abuse its discretion in granting the dismissal where Rule 25(a)(1) requires that a

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

1   court dismiss an action when a substitution has not been made by plaintiff during

2   the required time period. *Id.* There is no such similar rule requiring a dismissal

3   here.

4         Finally, in *Bennett*, the court found there was a lack of legal prejudice where

5   the only loss was of a *mere potential* defense that had not yet accrued to the

6   defendant. *Bennett v. Dhaliwal*, 721 Fed. Appx. 577, 578 (9th Cir. 2017). Unlike

7   the defendants in the cases Plaintiffs cite, Defendants will suffer plain legal

8   prejudice if the case is dismissed. Accordingly, the Motion should be denied.

9         **3.      The Reasons That Plaintiffs Provide for Voluntary Dismissal**
          **Themselves Demonstrate Prejudice and That Plaintiffs Have**
10        **Been Dilatory With Respect to Their Litigation Strategy**

11        Plaintiffs' explanations for seeking to dismiss this action show that their aim

12   is to cause Defendants legal prejudice and that they delayed far too long in settling

13   on their litigation strategy. Among other things, Plaintiffs want latitude to refile a

14   new action that names Valeant and Claire's Stores as additional defendants.

15   However, under Proposition 65, a person is only responsible for exposure from its

16   own products. Evidence about alleged asbestos content in Valeant's STS product

17   or Claire's Stores' cosmetics products is not relevant to a case against these

18   Defendants. The fact that Plaintiffs want to join Defendants in a new action with

19   other companies that make different products shows that they want to gain an

20   improper and prejudicial advantage by tainting Defendants with testing evidence

21   that should not be admissible against them. *See generally* Fed. R. Evid. 403. *See*

22   *also MJC Am. Ltd. v. Gree Elec. App. of Zhuhai*, 2015 WL 12743880, at *5, 7

23   (C.D. Cal. Apr. 14, 2015) (excluding evidence concerning different products under

24   Rule 403 where it would otherwise be unfairly prejudicial, complicate the case, and

25   has the potential to confuse the jury).

26        Defendants also expect that Plaintiffs' counsel will commence their next

27   Proposition 65 action in state court, just as they commenced this action in state

28   court. But the next time around, Plaintiffs' counsel most likely will name new

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-CV-04830-GW(KSX)

plaintiffs who have not suffered an injury-in-fact to prosecute the action, in an attempt to preclude removal to federal court.  After all, Plaintiffs' counsel previously communicated that they wanted to modify their claims to divest this Court of jurisdiction.  The "loss of a federal forum" (and federal *Daubert* standards for experts) represents plain legal prejudice.  *See Westlands Water Dist. v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996); *Eon Corp IP Holdings LLC v. Apple, Inc.*, 2015 WL 4914984 (N.D. Cal. Aug. 17, 2015) (motion for voluntary dismissal denied, in part because it raised concerns of improper forum shopping); *Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F. 2d 1380, 1389-90 (9th Cir. 1986) (voluntary dismissal of a claim denied when it was motivated by improper forum shopping).

Moreover, Plaintiffs' explanation for dismissal shows that they have not been diligent in committing to litigation strategy.  Plaintiffs began the process of initiating this case approximately two years ago.  They had ample time and material available to investigate their claims during those two years.  They could and should have settled on which defendants to sue and which substances to name.  It is patently unreasonable that they waited two years to decide that they might want to perform additional investigation, might want to add claims about additional substances, and might want to bring a different case that includes Valeant and Claire's Stores as defendants.  For those reasons, Plaintiffs' Motion should be denied.

**B.** **In the Alternative, the Court Should Condition a Voluntary Dismissal on the Payment of Costs and Attorneys' Fees**

If the Court might be inclined to grant a voluntary dismissal, the Court should condition the dismissal on Plaintiffs' payment of Defendants' costs and attorneys' fees.  The court has the power to order reimbursement of costs and fees as a condition of dismissal.  *Westlands Water Dist.*, 100 F.3d at 97.  Conditioning dismissal on prior payment of costs and attorney's fees is common and serves the purpose of protecting the defendant.  *Id.*; *see also, Woodfin Suite Hotels, LLC v.*

1  *City of Emeryville*, 2007 WL 81911, at *5 (N.D. Cal. Jan. 9, 2007) (it is

2  "commonplace" to award costs and fees as a condition of dismissal); *Tahaya Mirs*

3  *Inv. Inc. v. Helwan Cement Co. S.A.E.*, No. 2:16-cv-01001-CAS(AFMx), Dkt. 119

4  & 2016 WL 6744902 (C.D. Cal. Nov. 14, 2016) (awarding defendant reasonable

5  attorneys' fees in the amount of $445,835.69).  A plaintiff who finds the terms or

6  conditions set by the court to be too onerous is entitled to withdraw the motion and

7  proceed with the litigation.  8-41 Moore's Fed. Prac. Civ. § 41.40[10][f]; *Beard v.*

8  *Sheet Metal Workers Union*, 908 F.2d 474, 476 (9th Cir. 1990).

9      As shown above, this case has been actively litigated for an extended period

10  of time.  If the case is dismissed, the vast majority of the resources devoted to this

11  litigation will have been wasted.  Defendants seek fees relating to the following:

12  Notice of Removal (Dkt. No. 1); Pro Hac Vice Applications of Elyse D. Echtman

13  (Dkt. No. 6) and Peter A. Bicks (Dkt. No. 7); Motion to Remand (Dkt. No. 27);

14  Motion to Dismiss (Dkt. No. 20); Answers (Dkt. Nos. 45-46); Rule 16 conference

15  (Dkt. No. 51); Rule 26 conference and Joint Rule 26(f) Report (Dkt. No. 49); all

16  fact discovery including requests for production of documents, requests for

17  admissions and depositions of five Plaintiffs, as well as the discovery conference

18  before the Magistrate Judge; all expert discovery, including expert fees; Motion to

19  Amend (Dkt. No. 70); Mediation and Post-Mediation Status Conference; Request to

20  Vacate Motion to Amend Hearing (Dkt. No. 97); and the present Motion for

21  Voluntary Dismissal (Dkt. No. 96).

22      The time and expense spent diligently litigating this matter will not be useful

23  in subsequent Proposition 65 litigation.  Plaintiffs' counsel will likely file any

24  future litigation in state court and Defendants expect that they will seek to preclude

25  removal to federal court.  As a result, work relating to the removal, motion to

26  remand, pro hac vice applications (which cannot be repurposed in state court), as

27  well as the Rule 16 and Rule 26 conferences will be of no use.  Defendants also

28  expect that Plaintiffs' counsel will present new and different expert opinions,

OPPOSITION TO MOTION FOR
VOLUNTARY DISMISSAL
2:18-cv-04830-gw(ksx)

requiring new expert rebuttal work.  They likely will re-draft a new and different complaint, resulting in a different analysis for both a motion to dismiss and/or answering pleading.  Because Plaintiffs' counsel are likely to replace the named Plaintiffs in this litigation with others, the costs and fees associated with fact discovery relating to these specific Plaintiffs will be useless.  Finally, as Plaintiffs intend to include Valeant as a party in any subsequent litigation, work relating to the motion to amend, as well as the motion for voluntary dismissal will not be helpful in a future action.

Plaintiffs ask that the payment of costs and fees only ripen upon their filing of a new action, but the amounts Defendants spent on this litigation will be wasted regardless of whether another case is commenced.  Moreover, because this litigation has been attorney-driven, it is unlikely that these same Plaintiffs would file the next Proposition 65 case.  It is more likely that the attorneys would name different plaintiffs to bring the same claims.  Should the Court grant costs and attorneys' fees as a condition of dismissal, Defendants seek leave to submit a separate application detailing the costs and fees that should be awarded.

## IV.   CONCLUSION

For the reasons stated above, Defendants request that this Court deny Plaintiffs' Motion.  In the alternative, Defendants request the Court grant Defendants' costs and attorneys' fees as a condition of voluntary dismissal, in an amount to be determined.

Dated:        July 8, 2019                          ELYSE D. ECHTMAN
                                                    ORRICK, HERRINGTON &
                                                    SUTCLIFFE LLP


                                                    By: /s/ Elyse D. Echtman
                                                    ELYSE D. ECHTMAN
                                                    Attorneys for Defendants
                                                    Johnson & Johnson and Johnson &
                                                    Johnson Consumer Inc.